250

STATE OF MAINE
*vs.*
GEORGE WILLIAM MCLEOD

Kennebec.    August 20, 1964.

*Jon A. Lund, County Attorney,* for State.

*Robert A. Marden,* for Respondent.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ.  MARDEN, J., did not sit.

WILLIAMSON, C. J.    The defendant was convicted on two indictments charging sodomy.  R. S., c. 134, § 3.  The State's evidence was directed in each indictment to an act of fellatio with the defendant's adopted son, aged 17, on a given date in June 1963.

The case is before us on exceptions to the admission in evidence of the defendant's letter set forth below on the ground of irrelevancy and prejudice.  The letter, or what we may call the "suicide note," written by the defendant at the time of an attempt to commit suicide in 1957, and addressed to his wife and children including the adopted son, reads:

"Dear Alice, Good by.

"This is my last good by — Blotted like I'm blotted myself. I love you and I am doing this to save you pain. I am evil. Not the kind of person you should love. Billie can tell you why. Ask him. I love you   I love you   I love you and I always will.

All my love,      Geo."

"Laurie Baby

"What daddy is doing now is going to hurt you. But there is nothing left for him to do except to live and hurt you more. I wish I could kiss you good night   But if I did I would no be able to do what I am going to do. I love with all my heart and soul. And if there is such a thing as another life then I am sure I'll meet you there some day Because God will understand what I am doing. I love you all.

Daddy."

"Bruce & Aileen

"I love you both and I hope you will remember that."

The witnesses for the State were the adopted son and the defendant's wife who is the boy's mother by a prior marriage.

The son testified in substance: that the defendant committed the acts in question; that from 1960 the defendant committed other acts of sodomy and perversion upon him; that he submitted through fear; that a few days after the last act he refused to submit again, and complained to his mother in spite of the defendant's threats to kill him should he do so.

The defendant's wife, testifying for the State, told in substance of the complaint made by her son, of certain

circumstances tending to bear on the likelihood of acts of perversion in the past, but not relating to the acts of which the defendant was found guilty. She also testified of her husband's acts of violence directed against her, of his drinking habits, of their sorry and stormy married life, and in particular of an attempt by the defendant to commit suicide in 1957 with (on cross-examination) the receipt of the suicide note.

On objection on the ground of irrelevancy, the suicide note was excluded. As the State in its brief says, "The exclusion was undoubtedly correct in view of the posture of the case at that time." In short, both the State and the court were of the view that the suicide note relating to an event six years in the past was not relevant to the charges against the defendant.

The wife was then cross-examined closely about her married life and her relationship with the defendant. The record reads:

"Q    Since this happened have you made arrangements to have George McLeod [the defendant] taken off your Blue Cross policy?

"A    No, he was automatically taken off when the mill suspended it and he stopped working.

"Q    Did you have any communication with the Blue Cross regarding this policy?

"A    Regarding my policy, yes.

"MR. LUND: May I inquire as to what issue this relates?

"MR. MARDEN: The issue it is offered for, Your Honor, is to indicate the relationship existing between the witness and her husband consistent with a desire to have him out of her life.

"THE COURT: If offered for that purpose the jury may hear it. At this point I think I should say — and I am interrupting you now so you will

have it in mind throughout your cross-examination, the remainder of it, if you should want to refer to it, I excluded State's Exhibit 1 [the suicide note] a .few moments ago and I think now I will admit State's Exhibit 1 and it is admitted."

The defendant categorically denied the accusations made by the son. He offered evidence designed to show hostility on the part of the son and the wife, and to sustain his good character.

The credibility of the son was of course crucial to the case. The credibility of the wife, giving evidence adverse to her defendant husband, was also of critical importance to both State and defendant.

What possible relevance had the suicide note of 1957 to the proof of acts of perversion charged in June 1963? The suicide note was admitted, the record makes clear, for its bearing on the relationship between the witness wife and her husband.

We find nothing in the record to restore vitality to the suicide note as a proper item of evidence between its exclusion and later admission.

Here is a note written it would appear by the defendant in a state of intoxication, expressing guilt and love. Surely such a pathetic confession has no relevancy in establishing the relationship of a husband and wife six long years after the incident. The suicide note, it is to be noted, was written by the husband three years before the adopted son says that his father first committed acts of perversion.

The suicide note has no bearing either on the existing relationship of the husband and wife, or upon the alleged criminal conduct of the father with the adopted son. The presiding justice in the heat of the trial failed to notice the irrelevancy of the suicide note and the prejudice which would flow from its introduction in evidence.

The irrelevancy and the prejudice of the suicide note may be shown from two phrases. "Billy can tell you why" refers, it was agreed, to X. The State in its brief says, "If it be concluded that the note suggests a homosexual relationship with [X], it should be noted that the respondent himself testified on direct that his wife had accused him of infidelity 'with all of my friends, male and women, both.' "

Here then is evidence designed by the State to establish the relationship of the husband and the wife, now said to be capable of suggesting perversion six years in the past. That the jury placed importance on it is shown by their inquiry of the court to "Further clarify who Billy is if possible."

"I am evil. Not the kind of person you should love," wrote the defendant. The State would equate this confession of evil and of inadequacy with an admission of unlawful acts touching the offense in issue. The words do not admit in particular any crime of the nature of perversion.

Lastly, the State contends that since the defendant told of his "good works," the State may utilize the words "I am evil" as in the nature of an admission or a prior contradicting statement.

In our view when the defendant cried to his wife, "I am evil," he did not thereby place a weapon in the hands of those who would seek to destroy his credibility. We are satisfied that the "suicide note" was irrelevant in the proof of the charges against the defendant and was clearly prejudicial to him.

In sustaining the exceptions and thus setting aside the convictions, we bear in mind that it is of the highest importance in the administration of justice that no man be convicted upon inadmissible and prejudicial evidence. The defendant is entitled to a new trial on each indictment.

The entry will be

*Exceptions sustained.*